IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | Chapter 11 |
| | ) | |
| XECHEM INTERNATIONAL, INC., | ) | Bankruptcy No. 08 B 30513 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION ON DR. RAMESH PANDEY'S MOTION TO DEEM CLAIM TIMELY FILED, TO AMEND CLAIM, AND RESPONSE TO CLAIM OBJECTIONS

A claims dispute has arisen in this Chapter 11 bankruptcy case filed by debtor Xechem International, Inc. ("Debtor"). Dr. Ramesh Pandey ("Pandey") filed a claim against the bankruptcy estate. The preliminary issues posed are whether Pandey's Original Proof of Claim was timely filed and whether he should be permitted to amend his claim. Those issues are addressed herein, and all substantive issues are reserved for later litigation and disposition.

For reasons stated below and by separate order, Pandey's claim will be deemed timely filed and he will be granted leave to amend his claim, except to the extent the Amended Proof of Claim asserts a claim for loss of personal property.

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This proceeding is before the Court pursuant to 28 U.S.C. § 157 and referred to this Court by the United States District Court for the Northern District of Illinois Operating Procedure 15(a). Venue lies under 28 U.S.C. § 1409. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### BACKGROUND

This Debtor filed for relief under Chapter 11 of the Bankruptcy Code on November 9, 2008,

-1-

as did Xechem, Inc., a related entity. The two cases are being jointly administered, with Xechem, Inc., as the primary debtor under case number 08-30512. An order (the "Bar Date Order") was entered on December 11, 2008, setting March 2, 2009, as the last day for creditors to file proofs of claim (the "Claims Bar Date"). Dr. Ramesh Pandey, a founder, former officer, and creditor of the Debtor, was not served by Debtor and did not receive written notice of the Bar Date Order. Even though the Debtor included him on its Schedule F, which lists unsecured, nonpriority creditors, Debtor's certificate of service of the Bar Date Order on creditors did not show service of it on Pandey.

Pandey did eventually learn about the Bar Date Order and filed a proof of claim (the "Original Proof of Claim") against the Debtor. That Original Proof of Claim included claims totaling $1,669,000 for unpaid compensation from 2005 and 2006, a loan to the company plus accrued interest of 8%, accrued salary as of December 31, 2006, and attorneys' fees, as well as an unliquidated claim for "1-1/2% of net profits before taxes for 2004 to present."

Pandey filed that claim on March 4, 2009, two days after the Claims Bar Date expired. Both the Debtor and the Official Committee of Unsecured Creditors (the "Committee") objected to his claim as untimely and also on substantive grounds. In response, Pandey moved to deem his claim timely filed and to amend his claim. His proposed amended proof of claim (the "Amended Proof of Claim") includes claims totaling $2,916,094 for unpaid compensation for 2005 and 2006, severance pay, a loan to the company, interest on that loan, indemnification, and loss of personal property assertedly taken from his office after he was barred from the premises. It also includes unliquidated claims for royalties, indemnification, and "other amounts owing under [his] employment agreement." He values the lost personal property at $1,000,000. The Debtor did not respond to Pandey's Motion

to Amend, but the Committee opposes the Amended Proof of Claim, arguing that it is not timely under Rule 15 Fed. R. Civ. P.

## DISCUSSION

### I. Pandey's Original Proof of Claim Was Timely Because He Was Not Served with the Bar Date Order

A creditor who does not receive adequate notice of a bar date order is not subject to the general rule that late-filed claims should be barred as disruptive to an orderly discharge. *See In re Unroe*, 937 F.2d 346, 351 (7th Cir. 1991); *In re Envirodyne Indus., Inc.*, 206 B.R. 468, 472 (Bankr. N.D. Ill. 1997). In the Chapter 11 context, this means that the late-filed claim of creditor receiving less than the twenty-one days' notice required by Rule will not be disallowed on account of its tardiness. *See* Fed. R. Bankr. P. 2002(a)(7) ("[T]he clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of . . . the time fixed for filing proofs of claim pursuant to Rule 3003(c) . . . ." (which latter Rule governs proofs of claim in Chapter 11 cases)). This Rule ensures that creditors receive Constitutionally adequate Due Process notice. *See In re Smith*, 582 F.3d 767, 779 (7th Cir. 2009) (discussing Chapter 7 claims bar dates). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). As recently noted by a panel of the Seventh Circuit Court of Appeals:

> The notice must not only reasonably convey the required information, but it must also "afford a reasonable time for those interested to make their appearance." A key function of the notice provided to a creditor in a bankruptcy proceeding is to give the creditor the opportunity to file a proof

of claim and, where the debt is potentially nondischargeable, to request a determination of nondischargeability.

Smith, 582 F.3d at 779 (quoting Mullane, 339 U.S. at 314) (internal citations omitted).

However, the Debtor was ordered to serve the notice on all creditors. The parties in this case agree that Pandey was not served with the Bar Date Order and therefore did not receive proper notice of the Claims Bar Date. Therefore, Pandey was entitled to a reasonable opportunity to file his proof of claim. Pandey found out about the Claims Bar Date by February 27, 2009, when his original counsel contacted the Court Clerk to inquire about proper methods for filing a proof of claim. Despite this short notice, he did attempt to comply with the Claims Bar Date. However, he was unable to file his claim on March 2, 2009, because a snowstorm prevented his counsel from reaching his office in order to do so. The next day, Pandey's counsel overnighted the Original Proof of Claim to the Clerk of Bankruptcy Court, and it was filed on March 4, 2009, just two days after the Claims Bar Date. Evidence contradicting these assertions, such as a certified weather report, would be within easy reach of objecting counsel, but no such proof was supplied, leaving an inference of plausibility as to these allegations. But, snowstorm or not, Pandey was entitled to at least 21 days' notice to file his claim against the Debtor, but was not given that notice. Therefore, his Original Proof of Claim will be deemed timely.

**II. Pandey's Amended Proof of Claim Relates Back to the Original Proof of Claim as to All Claims Other than the Claim for Loss of Personal Property Because Those Claims Arise from the Employment Relationship Between Pandey and the Debtor**

A late-filed amendment may relate back to the date of the original proof of claim if the claims in the amendment arise from the same conduct, transaction, or occurrence, as required under Rule 15 Fed. R. Civ. P. (applied to adversary proceedings by Rule 7015 Fed. R. Bankr. P.). See Unroe,

937 F.2d at 349–50. While several rules pertaining to adversary proceedings automatically apply to contested matters such as claim objections, Rule 7015 is not one of them. *See* Fed. R. Bankr. P. 9014; *In re Stavriotis*, 977 F.2d 1202, 1204 (7th Cir. 1992). A bankruptcy judge may order the application to a contested matter of any of the adversary proceeding rules not automatically applied, but only after providing notice to the parties and reasonable opportunity to comply. Fed. R. Bankr. P. 9014. Yet even when Rule 15 is not directly applicable, the analysis under that Rule is often applied by analogy when deciding whether an amendment to a proof of claim is timely. *Stavriotis*, 977 F.2d at 1204.

In adversary proceedings, amended pleadings may relate back to original pleadings only when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B) (made applicable in bankruptcy by Fed. R. Bankr. P. 7015). Leave to amend proofs of claim should be freely given "'[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Stavriotis*, 977 F.2d at 1205 (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)). An additional relevant factor is whether the amended proof of claim asserts claims of the same general amount as those in the original proof of claim. *See id.* at 1205–06 (affirming denial of leave to amend when original claim was for $11,132.93 and the amended claim was for $2,435,078.39).

No order was entered to apply Rule 7015 to the claims process. There must be a remedy for the Debtor's neglect to serve proper due process notice, and due process is protected by application

of the Rule 7015 standard. Indeed, when debtors are made responsible for giving proper notice to claimants, no occasion could arise in advance even to consider a Rule 7015 order.

Most of the claims in the Amended Proof of Claim are timely filed under that standard. The Original Proof of Claim asserted claims for unpaid compensation, a loan Pandey made to the company, and a percentage of profits.[1] Each of these claims arises from agreements between Pandey and the Debtor concerning his employment and from the Debtor's bylaws. The Amended Proof of Claim reasserts these claims, although in different amounts. Those claims clearly involve the same core disputes as those in the Original Proof of Claim, and thus relate back.

Pandey also adds new claims for severance pay, indemnification, and valuable personal property that Pandey assertedly lost when he was locked out of the Debtor's offices (the "Personal Property Claim"). The severance and indemnification claims arise from the parties' employment agreements and the Debtor's bylaws. Because those claims arise from the same ongoing conduct, transaction, or occurrence as those in the Original Proof of Claim, they relate back. The Personal Property Claim, however, is tortious in nature and is derived from a theory of liability that does not arise from the parties' employment relationship. Therefore, that Claim does not relate back to the Original Proof of Claim.

The Amended Proof of Claim also asserts claims of the same general amount as those in the Original Proof of Claim. Excluding the Personal Property Claim, the liquidated claims in the Amended Proof of Claim total $247,094 more than those in the Original Proof of Claim. This is far less than the drastic increase of more than $2,400,000 that was said to justify denial of leave to

---

[1] The Original Proof of Claim also included a claim for attorneys' fees, but the Amended Proof of Claim drops that claim.

amend in *Stavriotis*. Because they are of the same general amount as the claims in the Original Proof of Claim and because they arise from the same conduct, transaction, or occurrence as those in the Original Proof of Claim, the claims asserted in the Amended Proof of Claim (other than the Personal Property Claim) will be found to relate back to the Original Proof of Claim under the Rule 15 standards.

### III. Pandey May Not Assert His Personal Property Claim as a Late Claim Because He Has Not Demonstrated Excusable Neglect

A claimant may file late proofs of claim if that claimant establishes "excusable neglect." Fed. R. Bankr. P. 9006(b); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1993). Four factors are relevant to whether a claimant has demonstrated excusable neglect: "'[1] the danger of prejudice to the debtor, [2] the length of delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the reasonable control of the movant, and [4] whether the movant acted in good faith.'" *In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004) (*quoting Pioneer*, 507 U.S. at 395) (alterations in original).

Pandey argues that if any of the claims in the Amended Proof of Claim do not relate back to those in the Original Proof of Claim, then they should be treated as timely filed new claims under the excusable neglect standard. Only the Personal Property Claim does not related back, but as discussed below, Pandey has not demonstrated excusable neglect as to that Claim.

#### A. Danger of Prejudice to Debtor

Factors considered when assessing prejudice under *Pioneer* include whether the debtor had knowledge of the claim at the time it proposed a reorganization plan, whether the late filing would disrupt the plan or economic models used in the plan's development, the size of the claim, and

whether allowing the late claim would induce other similarly sized late claimants to file their own claims. *Kmart*, 381 F.3d at 713–14. The burden is on the claimant to prove lack of prejudice to the debtor. *Id.* at 714.

Relying on *In re Pettibone*, 162 B.R. 791, 804 (Bankr. N.D. Ill. 1994), Pandey first asserts that the Debtor and the Committee have not demonstrated prejudice. However, more recent Seventh Circuit authority places the burden to show lack of prejudice squarely on Pandey. *See Kmart*, 381 F.3d at 714.

Pandey argues that the Debtor was earlier aware of his Personal Property Claim because he filed a police report alleging that someone employed by the Debtor stole his property. However, the mere existence of a police report does not mean that the Debtor was aware of the police report or the underlying facts. Pandey has not demonstrated that the Debtor knew about the Personal Property Claim before it was included in the proposed Amended Proof of Claim

Pandey argues further that there is no risk that a flood of similar claims would increase the estate's litigation costs. While this case may be relatively small when compared to megacases such as *Kmart*, the increase in Pandey's claim would be relatively large. If allowed, the Personal Property Claim, at $1 million, would constitute almost one-third of the liquidated portion of Pandey's claim against the estate. Such a rich increase could encourage other creditors to discover and assert new claims so as to increase their overall recovery similarly. Pandey claims that his situation is unique, but that bare assertion is not enough to meet his burden on this point.

Finally, Pandey argues that allowing the Personal Property Claim will not jeopardize the Debtor's ability to confirm a plan or effectively reorganize. However, Pandey has not shown that his $1 million Personal Property Claim, which represents a nontrivial portion of the Debtor's scheduled

unsecured, nonpriority claims of $19,565,601.29, would not jeopardize reorganization efforts. Two parties have proposed Chapter 11 plans in this case: the Committee and LaMonte Forthun, a shareholder of the debtor. The Committee's plan would grant unsecured creditors a pro rata share of a portion of the reorganized entity's equity. While allowance of the Personal Property Claim would not result in any additional monetary payout to Pandey under this plan, it would increase his pro rata share of the equity distributed to unsecured creditors. Under Forthun's plan, unsecured creditors would receive interest-bearing promissory notes for one-hundred percent of their claims. A new claim by Pandey representing more than five percent of all scheduled unsecured, nonpriority debt could certainly affect the financial viability of Forthun's Plan.

Because he has not shown that the Debtor was earlier aware of the property loss claim, that there is no risk of a flood of similarly late claims, or that allowance would not jeopardize the reorganization process, Pandey has not established that allowance of the Personal Property Claim would not prejudice the Debtor.

### B. Length of the Delay and its Impact on Judicial Proceedings

The length of a creditor's delay in asserting a claim may warrant denial of a late-filed claim. *Kmart*, 381 F.3d at 714 (affirming denial of claim when creditor filed claim one day late, but did not file a motion to deem that claim timely filed for eighty-one days). Bar date orders "serve an indisputably integral purpose in facilitating reorganizations" by "'enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against het bankruptcy estate and the general mount of the claims.'" *Kmart*, 381 F.3d at 715 (*quoting In re Hooker Invs., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991)). When a creditor files a claim late, this can frustrate the reorganization process. *See id.*

Pandey first asserted the Personal Property Claim in a motion filed on July 10, 2009, more than four months after the Claims Bar Date, and more than four months after he filed the Original Proof of Claim. Pandey argues that his original counsel was not a bankruptcy practitioner and that he asserted the Personal Property Claim just three weeks after he hired new, bankruptcy-savvy counsel. This is irrelevant. Pandey knew about the Claims Bar Date at least since he filed the Original Proof of Claim, but failed to assert the Personal Property Claim for four months thereafter. He has not explained or given any rationale for not focusing on the $1,000,000 Personal Property Claim when filing the Original Proof of Claim. Reasonable people do not forget a possible million dollar claim, and such a long delay weighs heavily against a finding of excusable neglect.

### C. Reason for the Delay

Although it is not the preeminent *Pioneer* factor, the reason for the creditor's delay can be "immensely persuasive." *Kmart*, 381 F.3d at 715 (finding mail clerk's selection of second-day delivery rather than next-day delivery not excusable neglect because delay was entirely within creditor's control). The failures of a creditor's attorney may be attributed to the creditor when considering the reason for delay. *Id.* at 715 n.2 (*citing Pioneer*, 507 U.S. at 396–97).

Pandey argues that the delay was out of his control because he did not receive proper notice of the Claims Bar Date and a because a snowstorm prevented his counsel from filing the Original Proof of Claim by March 2, 2009. While that explains the tardiness of the Original Proof of Claim, it does not explain why he waited four additional months to assert the Personal Property Claim. Pandey has provided no explanation for *that* delay. Because Pandey knew about the Claim at least since October 2007, when he made the police report, he knew about it when filing his Original Proof of Claim. His failure to include it was completely within his control and cannot constitute excusable

neglect.

### D. Pandey's Good Faith

A creditor may show good faith by promptly taking necessary actions, making appropriate follow up inquiries, and promptly acting to correct any mistakes. *See Kmart*, 381 F.3d at 716. While Pandey did attempt to comply with the Claims Bar Date once he learned of it, he did not promptly assert the Personal Property Claim even though he knew about that claim. He also did not attempt to rectify that mistake for four months. Further, failure to retain bankruptcy-savvy counsel for more than three months after learning of the Bar Date Order demonstrates Pandey's lack of diligence is asserting his claims against the Debtor. All of these factors weigh against a finding of good faith.

Because he has not been diligent and did not act in good faith, the delay was within his control, the delay was long, and he has not shown a lack of prejudice to the Debtor, Pandey has not demonstrated that his failure to timely assert the Personal Property Claim was either in good faith or the result of excusable neglect.

## IV. Pandey Cannot Assert the Personal Property Claim Late Because He Had Actual Knowledge of the Claims Bar Date and Had a Reasonable Opportunity to Appear and Assert His Rights

As discussed above in Part I, creditors are entitled to receive adequate notice of any order setting a claims bar date before they are bound by that order. *See In re Envirodyne Indus., Inc.*, 206 B.R. 468, 472 (Bankr. N.D. Ill. 1997). This rule ensures that creditors receive a reasonable opportunity to make an appearance and to assert their claims against the estate. *See In re Smith*, 582 F.3d 767, 779 (7th Cir. 2009). Accordingly, a creditor ordinarily must receive twenty-one days' notice of the claims bar date in a Chapter 11 case. Fed. R. Bankr. P. 2002(a)(7). However, even when a creditor does not receive formal notice, that creditor may be held bound to the claims bar date if

it had actual knowledge of the claims bar date and a reasonable opportunity to appear and assert its rights. *See Kmart*, 381 F.3d at 717.

Pandey argues that he is not bound by any claims bar date in this case because he never received formal, written notice of the Bar Date Order. However, he readily admits that he had actual knowledge of the March 2 Claims Bar Date at some point shortly before March 2, 2009, and that he attempted to comply with it. Yet Pandey waited more than four months to assert his new Personal Property Claim, during which time Pandey was fully aware of the Claims Bar Date. That delay is well beyond the twenty-one days' notice to which creditors are ordinarily entitled. He had ample opportunity to appear and assert the Personal Property Claim, but did not do so for four months. Therefore, Pandey is bound to that extent by the Claims Bar Date and cannot now complain of lack of notice as an excuse for tardily asserting the new Personal Property Claim against the Debtor.

## CONCLUSION

For reasons discussed above and by separate order, Pandey's Motion will be granted in part and denied in part as follows:

1.  The Original Proof of Claim will be deemed timely filed;

2.  All claims in the Amended Proof of Claim other than the Personal Property Claim will be found to relate back to those in the Original Proof of Claim, and therefore be deemed timely;

3.  Pandey will be permitted to file his Amended Proof of Claim to include all claims asserted therein other than the Personal Property Claim; and

4.  The Personal Property Claim will not be deemed timely filed and will not be found to relate back to the Original Proof of Claim, and therefore the objections to untimeliness of the Personal Property Claim will be sustained.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 26th day of February, 2010.